IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CLARA DAYE,
on behalf of herself and all others similarly situated,

       Plaintiff,

v.

COMMUNITY FINANCIAL SERVICE CENTERS, LLC,
d/b/a SPEEDY LOAN.

       Defendant.

## COMPLAINT FOR DAMAGES

1. Defendant Community Financial Service Centers, LLC, d/b/a Speedy Loan ("Speedy") makes payday loans in flagrant and knowing violation of the clear rules set forth in the New Mexico Small Loan Act. Its loans also violate the Truth in Lending Act and the federal Electronic Funds Transfer Act. Defendant made four such illegal payday loans to Plaintiff Clara Daye.

2. The lender manipulates the disclosures and paperwork to make it appear that these loans are installment loans, but in reality the loans are payday loans under New Mexico law.

3. In each loan, Speedy charged fees in an amount more than double the amount allowed by law for payday loans, and it falsely stated that the interest rate was much lower than it actually was.

4. In two of the loans, Speedy renewed the balances of previous loans, despite the fact that the Small Loan Act categorically prohibits renewals of payday loans.

5. In addition, Speedy illegally required Ms. Daye to authorize automatic withdrawal from her bank account to repay the loans.

6. Speedy disclosed incorrect and misleading information about the terms of the loans.

7. This conduct violates the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"), and the New Mexico Unfair Practices Act N.M.S.A 1978 §§ 57-12-1 *et seq.* ("UPA"). Because each payday loan violated the New Mexico Small Loan Act, N.M.S.A. 1978 § 58-15-1 *et seq.*, each loan is void.

8. Plaintiff brings this action on her own behalf, and on behalf of the many other borrowers around the state who have been victimized by Speedy's practices.

## Jurisdiction

9. This Court has jurisdiction under the TILA, 15 U.S.C. § 1640(e), under the EFTA, 15 U.S.C. § 1693m(g), and generally for the federal claims pursuant to 28 U.S.C. §§ 1331, 1337 and 2201. The Court has supplemental jurisdiction over the remaining state claims under 28 U.S.C. § 1367, because they arise out of the same form agreements as the federal claims.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the parties are located in this district and the events giving rise to this complaint occurred within the district.

## Parties

11. Plaintiff Clara Daye is a resident of Church Rock, New Mexico. She is a "consumer" as defined by the TILA, 15 U.S.C. § 1602(i) and Regulation Z, 12 C.F.R. § 226.2(a)(11). She is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

12. Defendant Community Financial Service Centers, LLC, d/b/a Speedy Loan ("Speedy") is a Delaware LLC with its principal place of business in Wisconsin. It operates a payday loan store in Gallup and eleven other locations in New Mexico. It is a "creditor," as defined in the TILA, 15 U.S.C. §1602(g), and Regulation Z, 12 C.F.R §226.2(a)(17). Speedy is not licensed to make payday loans, as required by the Small Loan Act, N.M.S.A. 1978 § 58-15-1 *et seq*.

## Payday Loans Are Subject to Specific Rules Due to Their Potential for Abuse

13. In 1955, New Mexico enacted the Small Loan Act, N.M.S.A. 1978 § 58-15-1 *et seq*., recognizing that "borrowers of small sums are often exploited by charges generally exorbitant in relation to those necessary to conduct a small loan business[.]"

14. The Small Loan Act controls the terms and interest rates that can be charged to borrowers, limits the amount of delinquency and other fees, and requires lenders to obtain licenses.

15. In 2007, in response to "the payday loan crisis in New Mexico," the New Mexico legislature expanded the Small Loan Act to impose even greater restrictions on one particularly predatory type of small loan: the payday loan. N.M.S.A. 1978 § 58-15-31 through -39; *State ex rel. King v. B&B Inv. Group, Inc.*, 2014-NMSC-024, ¶ 43.

16. The Small Loan Act defines a "payday loan" as "a loan in which the [Small Loan Act] licensee accepts a . . . debit authorization tendered by the consumer and agrees in writing to defer . . . use of the debit authorization until the consumer's next payday **or** another date agreed to by the [lender] and the consumer." [emphasis added]. Although the law calls this loan a "payday loan," the term "payday loan" also applies to loans that do not involve repayment on the borrower's payday.

17. The "payday loan" provisions do not apply to any "installment loan." The same Act defines "installment loan" as a loan to be repaid in four or more substantially equal payments, over a period of at least 120 days. The term "installment loan" does not include any loan in which a lender requires a "debit authorization" (electronically withdrawing funds from the borrower's bank account).

18. The amended Small Loan Act, with the "payday loan" provisions, provides simple and explicit rules for payday lenders, including:

    a. A usury limit on the fees charged for a payday loan, of $15.50 per $100 plus $.50 per loan. § 58-15-33(A) through (D).

    b. Repayment periods not to exceed 35 days. § 58-15-32(B).

    c. The right to rescind. § 58-15-32(C).

    d. A prohibition on renewal of loans. § 58-15-34(A).

    e. The right to enter an unsecured payment plan. § 58-15-35.

    f. The use of a commercially reasonable method of verification to verify that the borrower has the ability to repay. § 58-15-32(A) and -37.

    g. Required disclosures on the face of the agreement. § 58-15-38.

19. Violation of the Small Loan Act is a crime. § 58-15-30.

20. In *White v. Singleton*, the New Mexico Supreme Court held that "the general rule is that transactions in violation of a statute prescribing penalties are void." 1975-NMCA-104, ¶ 8, 88 N.M. 262, 539 P.2d 1024 (internal quotation marks and citation omitted).

**Federal Statutes Also Govern these Payday Loans**

21. Payday lenders also must comply with federal laws, including TILA and the EFTA.

22. The TILA is the cornerstone of consumer credit legislation. Congress passed the statute in 1968 to guarantee the accurate and meaningful disclosure of the costs of consumer credit. By doing so, it enables consumers to make informed choices in the credit marketplace and to avoid abusive lending.

23. The TILA dictates not only what information must be disclosed but how and when it should be disclosed. The TILA requires clear, conspicuous, and meaningful disclosures of financial terms, in a precise format.

24. The EFTA was enacted to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Since 1978, it has absolutely prohibited the conditioning of the extension of credit on repayment by preauthorized electronic funds transfer.

**Speedy Makes an Illegal Payday Loan to Ms. Daye**

25. Ms. Daye is a 60-year-old Navajo woman whose income consists of a small pension she receives around the first of each month, plus weekly payments for part-time employment providing in-home health care.

26. Ms. Daye struggles to make ends meet with her limited income.

27. Ms. Daye saw Speedy's storefront sign and decided to apply for a loan to help meet her living expenses.

28. On August 23, 2013, Speedy loaned Ms. Daye $300 pursuant to a contract entitled "New Mexico Installment Loan Contract" ("the Loan Agreement," Exhibit A).

29. The Loan Agreement was a "payday loan" as defined at N.M.S.A. § 58-15-2(H).

30. The Loan Agreement was made in the regular course of Speedy's trade or commerce, and was for personal, family, or household purposes.

31. Speedy uses this form contract, Exhibit A, for all of its loans.

32. The Loan Agreement states that "**You** promise to pay to Speedy Loan Corp. (Creditor) **each installment payment as it becomes** due as shown above in **Payment Schedule.**" [emphasis in original]

33. The section of the Loan Agreement designated "Payment Schedule" states that the borrower must make 4 monthly payments in the amount of $108.11, and that "Payments are due on your payday."

34. The Loan Agreement does not state the dates upon which the first payment or any subsequent payments are due, nor whether they are due weekly, monthly, or otherwise, in violation of the TILA's requirement that the timing of payments be clearly and conspicuously disclosed.

35. The Loan Agreement calls for four payments of $108.11, which means that the Total of Payments is $432.44 and the Finance Charge is $132.44 ($432.44 minus the loan's principal amount of $300). However, the Loan Agreement inaccurately discloses the Total of Payments as $397.94 and the Finance Charge as $97.94.

36. The Finance Charge is more than double the amount allowable for payday loans under the payday loan provisions of the Small Loan Act.

37. In addition to exceeding the allowable interest rate, Speedy's Loan Agreement violates the New Mexico Small Loan Act's regulation of payday loans because:

   a. It does not include a provision granting the consumer the right to rescind;

  b.  It does not offer customers the opportunity to enter into an unsecured payment plan;

  c.  Speedy did not use a commercially reasonably method of verification to verify that the proposed loan agreement is repayable;

  d.  It did not include the disclosures required on the face of the agreement.

38. The Loan Agreement discloses that the Annual Percentage Rate is 196.99198%. However, when calculated according to the "Amount of Payments" stated on the Loan Agreement, using the date Speedy actually withdrew the first payment from Ms. Daye's bank account (September 3, 2013), the Annual Percentage Rate is actually much higher, about 276%.

39. The Loan Agreement includes an "Itemization of the Amount Financed" that contains a confusing and misleading term called "Total Amount Financed," as $397.94. This "itemization" repeats the inaccurate disclosure that the Finance Charge is only $97.94, and it is inconsistent with the disclosures segregated in the Truth in Lending box above it.

40. The Loan Agreement states that "On or about the day each **installment payment becomes** due, you authorize us to **affect** one or more ACH debit entries to your Account at the Bank." [emphasis in original].

41. "ACH debit entries" are automatic withdrawals of funds from a consumer's bank account.

42. The Loan Agreement was conditioned on repayment by means of preauthorized electronic fund transfer, namely automatic withdrawals from Ms. Daye's bank account. This requirement of preauthorized electronic fund transfers violates the EFTA.

43. At the time that she executed the Loan Agreement, Speedy also required Ms. Daye to sign a document entitled "PPD/ACH Authorization" (a Debit Authorization, Exhibit B).

44. This Debit Authorization gave Speedy permission to withdraw payments from Ms. Daye's bank account.

45. Exhibit B is the authorization form that Speedy requires for all of its loans.

46. The Debit Authorization allowed automatic withdrawals in amounts that differed from the amounts disclosed in the payment schedule of the Loan Agreement. The first automatic withdrawal was in the amount of $73.63, rather than the amount of $108.11 disclosed by the Loan Agreement.

47. In this form debit authorization, Speedy states explicitly that "the arranged dates above do not constitute a change in the terms of the loan to which said payments are made. I am specifically requesting the above, not as a change in the due date, but merely for my own convenience in making the payments."

48. The lower payment amount on the Debit Authorization, and the disclosures provided to Ms. Daye about her loan, were fundamentally inconsistent and misleading.

49. In conflict with the Loan Agreement, the Debit Authorization stated dates of automatic withdrawals, beginning only eleven days after the loan date of August 23, 2013. It discloses subsequent payments on October 1, November 1 and a final payment on December 2, 2013.

50. The dates of the automatic withdrawals in the Debit Authorization correspond with Ms. Daye's monthly receipt of her pension payments.

### Speedy Renewed the Payday Loan to Ms. Daye

51. For the August 23, 2013 loan, Speedy Loan withdrew the September and October payments from Ms. Daye's bank account in accordance with the Debit Authorization.

52. On or about October 21, 2013 Speedy loaned Ms. Daye $300 in a renewal of the August loan. It retained $172.62 to pay off the balance from the August loan and gave the remaining $127.38 to Ms. Daye.

53. The Small Loan Act categorically prohibits renewals of payday loans.

54. The October 21, 2013 loan used the same form contract and required form debit authorization (Exhibit C) as the first Loan Agreement and Debit Authorization.

55. Ms. Daye ultimately paid off the October loan.

56. Speedy told Ms. Daye that she could get an additional loan, so when she needed additional money to meet her expenses, Ms. Daye returned to Speedy.

57. On February 15, 2014, the parties entered into a new loan agreement (Exhibit D). This loan used the same or a substantially similar form contract and required debit authorization as a condition of the extension of the loan.

58. The February loan had an interest rate more than triple the legal rate for payday loans.

59. On May 23, 2014 Ms. Daye renewed Speedy's February loan (Exhibit E). Again, the parties used the same or substantially similar form contracts and required debit authorizations as a condition of the extension of the loan.

60. All the loans violate the Small Loan Act, the TILA, and the EFTA, and are misleading and deceptive, as detailed above.

61. Speedy continues to withdraw payments from Ms. Daye's bank account as of the date of filing of this lawsuit.

62. Ms. Daye suffered actual damages due to Speedy's illegal conduct, including the payment of money to Speedy drastically in excess of legally permitted amounts.

63. Speedy's loans to its other customers violate the laws in the same ways as its loans to Ms. Daye.

64. Speedy regularly, knowingly, and willfully entered into illegal payday loans with Ms. Daye and with its many other customers throughout New Mexico.

## CLASS ALLEGATIONS

65. Plaintiff brings this action on behalf of three classes of consumers who entered into one or more loans with a Speedy location in New Mexico within the four years preceding the filing of this lawsuit.

66. The three classes largely overlap.

67. Class 1 is the "payday loan class." It consists of all persons who entered into a loan with Speedy within four years prior to the filing of this lawsuit and meet all of the following criteria:

    a. Speedy accepted a personal check or debit authorization, where Speedy agreed in writing to defer presentment until the person's next payday or another date agreed to by the parties;

    b. The loan had one or more of the following characteristics: The loan had less than four payments; OR the loan had a period of maturity of less than 120 days regardless of the number of payments; OR the extension of the loan was conditioned upon repayment by means of "debit authorization," the preauthorized electronic fund transfer from the consumer's account; AND

    c. The loan had one or more of the following characteristics: a charge or fee exceeding the rate permitted for a payday loan in New Mexico; a maturity period greater than 35 days; the loan was a renewal; the loan agreement failed to include

a provision granting the consumer the right to rescind; the loan agreement offered no opportunity to enter into an unsecured payment plan; the lender did not use a commercially reasonably method of verification to verify that the proposed loan agreement was permissible; the loan agreement did not include the disclosures required by the Small Loan Act on the face of the agreement.

68. Class 2 is the "Truth in Lending class." It consists of all consumers who entered into loan agreements within one year prior to the filing of this case and whose loan:

   a. Under-discloses the Finance Charge, the Annual Percentage Rate and/or the Total of Payments; OR

   b. Fails to contain a Payment Schedule showing the date(s) of the first and subsequent payments, or which provides inaccurate information about such payment dates.

69. Class 3 is the "Electronic Funds Transfer Act class." It consists of all consumers who entered into loan agreements within one year prior to the filing of this case and whose loan was conditioned on the consumer's repayment by means of preauthorized electronic fund transfer.

70. The three classes are so numerous that joinder of all members is impracticable. This action is predicated on standard practices of Speedy, which enters into a large number of payday loans across the state of New Mexico.

71. There are questions of law and fact common to each class, which questions predominate over any questions affecting only individual class members. The principal common questions presented are:

   a. With regard to the payday loan class:

        i.      Whether the loans are a payday loan under the Small Loan Act;

        ii.     Whether the loans exceed the maximum charges under the Small Loan Act;

        iii.    Whether the loans violated other provisions of the Small Loan Act;

        iv.    Whether the loans violated the UPA; and

        v.     Whether Speedy's loans are void or it would otherwise be inequitable for Speedy to retain or collect unlawful interest.

    b.    With regard to the TILA class:

        i.      Whether Speedy under-disclosed the Finance Charge, Annual Percentage Rate or Total of Payments, in violation of the TILA; and

        ii.     Whether Speedy failed to list the payment schedule fully and accurately, in violation of the TILA.

    c.    With regard to the EFTA class: Whether Speedy conditioned the extension of credit for these loans upon the consumer's repayment by means of preauthorized electronic fund transfer.

72.    Plaintiff's claims are typical of those of the class members.  All are based on the same factual and legal theories and arise from the same form documents.

73.    Plaintiff will fairly and adequately represent each of the three classes.  Plaintiff is committed to litigating this matter.  She has retained counsel experienced in handling class claims and claims involving unlawful business practices.  Neither Plaintiff nor counsel have any interests which might cause them not to pursue this claim vigorously.

74.    A class action is superior for the fair and efficient adjudication of the class members' claims.  Class members are unaware of the fact that their rights have been violated.

Defendant's customers cannot generally afford counsel to engage in individual litigation against Defendant.  A failure of justice will result in the absence of a class action.

### First Claim for Relief: The Payday Loans Are Void

75. The payday loans made to Ms. Daye, along with every other payday loan with like characteristics, violated the New Mexico Small Loan Act, which provides for criminal penalties, and therefore the loans themselves are void.  *White v. Singleton*, 1975-NMCA-104, ¶ 8, 88 N.M. 262, 539 P.2d 1024.

76. All borrowers who entered into void loans are entitled to the return of all interest and other charges other than principal.

77. In the alternative, Speedy would be unjustly enriched by being permitted to retain or collect amounts in excess of the legally permitted rate, and should be required to disgorge such amounts and be prohibited from collecting any further unlawful amounts.

### Second Claim for Relief: Violation of TILA

78. Defendant failed to disclose accurately the Finance Charge, APR, Total of Payments, and Payment Schedule.  The disclosures were not made clearly or conspicuously.  These practices violated the Truth in Lending Act, 15 U.S.C. §§ 1632(a) and 1638(a)(3), (4), (5), and (6) and Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

79. Defendant is liable as provided in 15 U.S.C. § 1640 for statutory damages plus costs and reasonable attorney fees to the TILA class.

### Third Claim for Relief: Violation of the EFTA

80. Speedy conditioned the extension of credit for these loans upon the consumer's repayment by means of preauthorized electronic fund transfer, in violation of the EFTA, 15 U.S.C. § 1693k.

81. Defendant is liable as provided in 15 U.S.C. § 1693m for statutory damages plus costs and reasonable attorney fees to the EFTA class.

### Fourth Claim for Relief: Violation of the Unfair Practices Act

82. By entering into loans made illegal under New Mexico law and claiming entitlement to unlawful amounts in repayment, by providing deceptive information about its loans, and as otherwise described above, Speedy violated the New Mexico Unfair Practices Act, N.M.S.A. 1978 § 57-12-2.

83. Speedy's violation of the Unfair Practices Act was willful.

84. Plaintiff and each member of the payday loan class are entitled to actual damages, trebled, including all money paid to Speedy in excess of the principal amount loaned, plus costs and reasonable attorney fees.

85. Plaintiff is entitled to injunctive relief which enjoins Speedy from continuing to collect unlawful amounts on its illegal payday loans.

### Prayer for Relief

WHEREFORE, Ms. Daye prays that this Court:

A. Certify this case as a class action;

B. Appoint counsel for plaintiff as counsel for the three classes;

C. Determine that Speedy's payday loans are void and order the refund of any amounts paid in excess of the principal amount of such loans, or in the alternative, order Speedy to disgorge any amounts that would constitute unjust enrichment;

D. Award statutory damages for violations of the TILA;

E. Award statutory damages for violations of the EFTA;

F. Award actual damages, trebled, under the UPA;

G.      Enjoin Defendant from collecting any amounts in excess of that to which it is legally entitled;

H.      Award reasonable attorney fees and costs, and;

I.      Grant such further relief that is just and reasonable under the circumstances.

Respectfully submitted,

FEFERMAN & WARREN

<u>/s/Nicholas Mattison</u>
Nicholas Mattison
Richard N. Feferman
300 Central Ave., SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)
Attorneys for the Plaintiff