IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLARA DAYE, on behalf of herself and all
others similarly situated,

       Plaintiff,

vs.                                                                                              No. CIV 14-0759 JB/SCY

COMMUNITY FINANCIAL SERVICE
CENTERS, LLC, d/b/a SPEEDY LOAN,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel Defendant to Respond to Plaintiff's First Set of Discovery, filed April 14, 2015 (Doc. 30). The Court held hearings on May 12, 2015, and August 11, 2015. The primary issue is whether the Court should compel Defendant Community Financial Service Centers, LLC, d/b/a/ Speedy Loan, to produce all documents relating to other loan customers pursuant to Plaintiff Clara Daye's requests, which request that Speedy Loan admit that the loans constitute payday loans. In accordance with Speedy Loan's and Daye's agreement at the hearing, the Court will order Speedy Loan to disclose all loan documents relating to other loan customers without conceding that the loans constitute payday loans. The Court therefore grants the Motion in part and denies it in part.

**FACTUAL BACKGROUND**

Speedy Loan made four separate loans to Daye. See Complaint for Damages ¶ 1, at 1, filed August 22, 2014 (Doc. 1)("Complaint"). Each loan was a "payday loan," as § 58-15-2(H) of the New Mexico Small Loan Act of 1955, N.M.S.A. 1978 §§ 58-15-1 to -39 ("Small Loan Act"), defines the term. Complaint ¶ 29, at 5. Daye argues that Speedy Loan's loans violated

New Mexico's laws regarding payday loans by charging more than double the authorized rate, illegally renewing the loans, and failing to provide many of the other required loan terms that the Small Loan Act sets forth.  See Complaint ¶¶ 36-38, at 6-7; id. ¶¶ 51-53, at 8-9.  Daye contends that, even though Speedy Loan knew its lending practices were unlawful, it attempted to manipulate its disclosures to make its loans appear similar to installment loans, which are subject to less restrictive regulation under New Mexico law.  See Complaint ¶ 2, at 1.

Daye also argues that Speedy Loan violated the Truth in Lending Act, 15 U.S.C. §§ 1601 - 1667f ("TILA"), by under-disclosing the finance charge, the annual percentage rate, and the total number of payments in its loan paperwork.  Complaint ¶¶ 78-79, at 13.  Next, Daye alleges that Speedy Loan violated the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 - 1693r ("EFTA"), by conditioning its extension of credit on repayment by preauthorized electronic funds transfer.  Complaint ¶¶ 80-81, at 13-14.  Finally, Daye contends that Speedy Loan's conduct violated the New Mexico Unfair Practices Act, N.M.S.A. 1978 §§ 57-12-1 to -26 ("UPA").  Day alleges that Speedy Loan committed the same violations against hundreds or thousands of people.  See Complaint ¶ 65, at 10.

**PROCEDURAL BACKGROUND**

Daye filed the brief supporting her motion to compel on April 14, 2015.  See Brief in Support of Opposed Motion to Compel Defendant to Respond to Plaintiff's First Set of Discovery, filed April 14, 2015 (Doc. 31)("Motion").  In general, Daye seeks to determine the scope of Speedy Loan's alleged legal violations with regard to the putative class.  See Motion at 2.  She argues that, in regard to specific requests for production, requests for admission, and interrogatories, Speedy Loan's "response provided virtually no information concerning other individuals who may have been affected," and provided no supplemental response.  Motion at 2.

Accordingly, Daye requests that the Court order that Speedy Loan disclose the following information.

### 1.     Requests Relating to Other Speedy Loan Customers.

First, Daye alleges that Speedy Loan refuses to disclose information about other customers to whom it made payday loans, as requested in: (i) Interrogatory Nos. 12, 13, and 19; (ii) Request for Production No. 3; and (iii) Request for Admission No. 1, 4, 5, 7, and 8.  See Motion at 3.  Daye argues that Speedy Loan's loans to Daye "are at least four examples of 'payday loans.'"  Motion at 5.  Speedy Loan responded on April 29, 2015.  See Speedy Loan's Response to Motion to Compel Defendant to Respond to Plaintiff's First Set of Discovery, filed April 29, 2015 (Doc. 36)("Response").  It argues that "its loans are not payday loans, . . . and the loans are therefore not subject to the provisions of the Act related to payday loans."  Response at 2.  Consequently, Speedy Loan argues that it does not possess "any information or documentation that is responsive to Plaintiff's requests for information related to its provision of payday loans."  Response at 2.  In short, Speedy Loan argues that, because it "does not offer payday loans, there is simply no responsive information to provide."  Response at 3.

Speedy Loan "offered to provide Plaintiff with the information and documents in its possession related to the installment loan products that it has provided to customers during the time frames identified in Plaintiff's discovery requests," as long as Daye did not require Speedy Loan to state that the loans fit the definition of a payday loan under the Small Loan Act.  Response at 3.  Speedy Loan states that, because it cannot make this admission, "the parties appear to be at an impasse."  Response at 4.  Daye replied on August 7, 2015.  See Reply Brief in Support of Opposed Motion to Compel Defendant to Respond to Plaintiff's First Set of Discovery, filed August 7, 2015 (Doc. 51).  Daye maintains that Speedy Loan must disclose

these loans pursuant to Daye's original request because the loans constitute payday loans. See Reply at 3-4. Daye asserts that Speedy Loan "could assemble all of the requested information in the form of an Excel spreadsheet" that includes all customers who received loans four years or less before the lawsuit. Reply at 5. Because Speedy Loan could compile this information, Daye argues that Speedy Loan "should provide the requested spreadsheet" and "be ordered to produce a knowledgeable designee to explain the information produced, if necessary." Reply at 7-8.

The Court held hearings on May 12, 2015, and August 11, 2015. See Transcript of Hearing (taken May 12, 2015)("May Tr.");[1] Transcript of Hearing (taken August 11, 2015)("August Tr.").[2] At the May hearing, Daye stated that Speedy Loan agreed to open loan files for her to examine and copy, which would enable her to determine whether the loans were payday loans pursuant to the TILA. See May Tr. at 6:2-11 (Mattison). Speedy Loan agreed to give Daye whatever loan documents she requested, as long as it could maintain that it made no payday loans. See May Tr. at 32:1-14 (Kochersberger). Because Speedy Loan agreed to produce for examination all loan documents that fit Daye's criteria, the Court stated that Speedy Loan could disclose these loans without agreeing that they constitute payday loans. See May Tr. at 38:6-11 (Court); id. at 38:8-14 (Court: "All you're doing is producing information . . . . But we won't be in agreement at all that you've agreed to anything about the meaning."). The parties agreed to this arrangement. See Tr. at 41:16-25 (Court, Kochersberger, Mattison).

---

[1] The May hearing was a status conference hearing in which the Court addressed some of the discovery issues that Daye's Motion presents. See May Tr. at 2:16-3:9 (Court). The parties agreed to also have a hearing in August in case they could not resolve their discovery issues without the Court's help. See May Tr. at 42:1-11 (Court).

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

At the August hearing, Daye stated that she still sought a spreadsheet containing the requested information. Speedy Loan asserted that it recently sent Daye a database of all the loans during the relevant period from which she could make a spreadsheet. See August Tr. at 24:21-24 (Kochersberger). Daye contended that the database omitted some necessary information, but the Court noted that Daye could potentially extract the information she needed from the database. See August Tr. at 26:23-27:5 (Mattison); id. at 33:3-5 (Court). The Court suggested that the parties arrange for their document specialists to meet and discuss whether Daye could extract the necessary information from the database that Speedy Loan provided. See August Tr. at 29:20-30:4 (Court). The parties agreed to the arrangement. See August Tr. at 35:4-36:4 (Court, Kochersberger, Mattison). Daye agreed that, if the document specialists determined that she could extract the needed information, she could organize the information herself into her desired format. See August Tr. at 36:18-21 (Court, Mattison).

### 2. Requests Relating to Other Customers Whose Loans Violated the TILA.

Second, Daye alleges that Speedy Loan refuses to disclose information about other customers whose loans violated the TILA, which Interrogatory Nos. 8 and 10, and Request for Production Nos. 7 and 9 request. See Motion at 8. Daye states that Interrogatories Nos. 8 and 10 "called for specific information relating to other customer loans in which Speedy committed the same violations of the TILA as it did in Ms. Daye's case," including the total number of loans, and information necessary to identify the borrower. Motion at 9. Similarly, Request for Production Nos. 7 and 9 request the corresponding documents.

Speedy Loan contends that the requests are overly broad and unduly burdensome. See Response at 4. Because the information is not "sortable by the fields requested by Plaintiff," Speedy Loan contends that "the expense and burden that would necessarily result from requiring

Speedy Loan to have one or more of its employees individually examine over 6,200 loan files will impose a significant and undue burden and expense on it." Response at 4-5. Nonetheless, Speedy Loan offers to allow Daye to review its loan files as they are kept in their regular course of business. See Response at 5. Speedy Loan asserts that this review will enable Daye to compare the documents referenced in discovery requests with the documents contained in the loan files and make copies of documents it believes are responsive. See Response at 5.

In her Reply, Daye argues that the spreadsheet "would provide information to identify class members and calculate their damages." Reply at 8. As discussed above, at the hearings, the Court and the parties agreed that Speedy Loan would give Daye access to its files, see May Tr. at 38:6-11 (Court), and that Speedy Loan and Daye would determine whether Daye could extract any additional information from the database that Speedy Loan gave Daye, see August Tr. at 35:4-36:4 (Court, Kochersberger, Mattison).

### 3. Requests Relating to Form Loan Contracts.

Daye argues that Speedy Loan refuses to disclose its form loan contracts, as Request for Production No. 2 requests. See Motion at 11. At the August hearing, Speedy Loan asserted that it gave Daye the four form loan contracts it used during the period Daye requested. See August Tr. at 8:5-17 (Kochersberger). It contended that, "with respect to the forms, we've given them all, we don't have anything else, we don't have any reason to believe that there is anything else." August Tr. at 9:14-17 (Kochersberger). Nonetheless, Daye argued that she needed to know the exact dates that Speedy Loan started using a different form.

Because Speedy Loan offered to make its documents available, the Court proposed a compromise: Speedy Loan would give Daye a list of forty-eight contracts that were executed on whatever date that Daye wanted, and Daye could look at each loan file and make copies of the

file to determine on which dates Speedy Loan began using a new form contract.  <u>See</u> August Tr. at 23:5-17 (Court).  The parties agreed to the Court's solution.  <u>See</u> August Tr. at 23:18-24:10 (Court, Kochersberger, Mattison).

### 4. **Private Financial Information.**

Finally, Daye alleges that Speedy Loan refuses to disclose information about its finances, including its federal tax returns and any financial statements showing its net worth for 2013 and 2014, as Request for Production No. 10 requests.  <u>See</u> Motion at 11.  Speedy Loan argues that Daye's request is premature because no class has yet been certified.  <u>See</u> Response at 7.  Speedy Loan contends that Daye should meet some threshold of proving liability before the Court requires it to divulge its private financial information.  <u>See</u> Response at 8.[3]

"Since the filing of the Motion to Compel, the parties were able to agree on a protective order enabling the disclosure of tax documents and financial statements." Reply at 10.  Speedy Loan disclosed documents titled "Community Financial Service Centers d/b/a Speedy Loan." Reply at 10.  Despite Speedy Loan's disclosures, Daye asserts that neither designee testifying about these records was able to testify specifically about the tax documents and did not know

---

[3] At the May hearing -- before Speedy Loan disclosed its financial documents -- Daye stated that Speedy Loan's financial information was relevant to calculating damages in a class action; Daye contends that Speedy Loan's net worth "creates a ceiling for the amount of damages."  May Tr. at 12:16-20 (Mattison).  Speedy Loan responded that its financial data is confidential, because it is a privately held company.  <u>See</u> May Tr. at 14:11-15 (Kochersberger).  It argued that "there are a number of steps that the plaintiff still has to get through before this could ever even potentially become an issue."  May Tr. at 14:15-18 (Kochersberger).  The Court noted that Daye's request for financial statements was discrete and not burdensome, and would likely reveal information discoverable under rule 26 of the Federal Rules of Civil Procedure.  <u>See</u> May Tr. at 16:6-12 (Court).  The Court therefore overruled Speedy Loan's objection and ordered Speedy Loan to disclose the information Daye requested in Request for Production number 10.  <u>See</u> May Tr. at 16:17-19 (Court).  The parties agreed to operate under a protective order that "completely prevents any financial information from being used outside of this litigation." May Tr. at 14:1-6 (Mattison).  <u>See</u> May Tr. at 20:10-18 (Court, Mattison, Kochersberger).

Speedy Loan's net worth. See Reply at 10. Accordingly, Daye contends that she "will need considerable additional information" to evaluate Speedy Loan's net worth. Reply at 10.

At the August hearing, Speedy Loan argued that, because it is a private company, "nobody has determined the net worth," so no one it brings to a deposition will be able to testify to its net worth. August Tr. at 40:1-8 (Kochersberger). The Court warned Speedy Loan that, if it alleges that no one knows Speedy Loan's net worth in a deposition under rule 30(b)(6) of the Federal Rules of Civil Procedure and fails to supplement the discovery, the Court will likely preclude it from introducing evidence on Speedy Loan's net worth at trial. See August Tr. at 40:19-41:6 (Court). To provide Daye with the information she needed on Speedy Loan's financials, the parties agreed to hold another 30(b)(6) deposition. See August Tr. at 41:20-25 (Court). Daye agreed to be more specific in asking for a witness who could discuss Speedy Loan's net worth. See August Tr. at 42:1-43:15 (Court, Kochersberger, Mattison).

### 5. **The Policy Manual and Daye's Loan Documents.**

Daye raises two new discovery issues in her Reply. First, she states that, since filing her Motion, she has discovered that Speedy Loan has not disclosed, and may have destroyed, its complete operating manual or guidelines in response to her Requests for Production Nos. 4, 5, and 6. See Reply at 10-11. At the August hearing, Speedy Loan argued that Speedy Loan used an electronic manual and did not maintain prior versions. See August Tr. at 44:8-25 (Kochersberger). Consequently, any prior version no longer existed. See August Tr. at 44:8-25 (Kochersberger). Daye stated that she reserved the right to assert that Speedy Loan's failure to maintain the manual constitutes spoliation of evidence, but that Speedy Loan's assertion was sufficient to meet her discovery needs. See August Tr. at 45:10-13 (Mattison).

Second, she argues that Speedy Loan has not disclosed all documents relating to Daye's loan, as Request for Production No. 1 requests.  <u>See</u> Reply at 11.  She contends that Speedy Loan provided "some of its computer records," but that it withheld other information, including information concerning her debit authorizations.  Reply at 11.  At the August hearing, she stated that, if Speedy Loan could confirm that it turned over all information relating to Daye, she would be satisfied.  <u>See</u> August Tr. at 45:15-22 (Mattison).  Speedy Loan asserted that, after Daye specifically asked for the additional documents, it gave her all the documents.  <u>See</u> August Tr. at 47:6-14 (Kochersberger).  Because the parties have resolved these disputes themselves, the Court need not order the parties to take any action.

## **ANALYSIS**

At the May and August hearings, the parties resolved their discovery disputes.  First, they agreed that Speedy Loan would disclose its loan documents relating to other customers without conceding that the loans constitute payday loans.  The Court therefore orders, according to the parties' agreement, that Speedy Loan disclose all loans that meet Daye's requests, but it need not admit that the loans are payday loans.  Second, Speedy Loan must provide Daye with certain form loan contracts, pursuant to the parties' agreement at the hearings.  Third, if Daye determines that she needs additional information regarding Speedy Loan's financials, the parties will hold another 30(b)(6) deposition.  The Court therefore grants the Motion in part and denies it in part.

**I.    SPEEDY LOAN MUST DISCLOSE ITS LOAN DOCUMENTS RELATING TO OTHER CUSTOMERS, BUT IT NEED NOT ADMIT THAT ITS LOANS ARE PAYDAY LOANS UNDER THE SMALL LOAN ACT.**

For the reasons stated on the record at the hearing, to which the parties agreed, Speedy Loan must turn over all loan documents relating to loans that Speedy Loan made to other

customers that fit Daye's requests, but Speedy Loan need not agree that they constitute payday loans.  See May Tr. at 38:6-11 (Court).  The Court therefore orders Speedy Loan to respond to: (i) Interrogatory Nos. 8, 9, 12, 13, and 19; (ii) Request for Production Nos. 3, 7, and 9; and (iii) Request for Admission Nos. 1, 4, 5, 7, and 8, by providing Daye with loan documents that fit Daye's desired search criteria.  Again, however, as the parties agreed at the hearings, Speedy Loan need not comply with Daye's request in her Motion that Speedy Loan concede that the loans constitute payday loans.  See May Tr. at 38:6-11 (Court).  Additionally, as stated at the hearings, the parties must meet with document specialists to determine whether Daye can uncover any additional information from the loan information that Speedy Loan has already provided.  See August Tr. at 35:4-36:4 (Court, Kochersberger, Mattison).

## II.   SPEEDY LOAN MUST PROVIDE DAYE WITH CERTAIN FORM LOAN CONTRACTS.

As the parties decided at the August hearing, Speedy Loan must give Daye a list of forty-eight contracts executed on whatever date Daye desires to enable her to determine on which dates Speedy Loan began using a new form contract.  See August Tr. at 23:5-17 (Court); id. at 23:18-24:10 (Court, Kochersberger, Mattison).

## III.   THE PARTIES WILL HOLD ANOTHER DEPOSITION TO ALLOW DAYE TO ASK MORE SPECIFIC QUESTIONS ABOUT SPEEDY LOAN'S FINANCIALS.

By the time of the hearing, Speedy Loan had already disclosed its tax documents and financial statements.  See Motion at 10.  Pursuant to their agreement at the August hearing, if Daye determines that she needs more specific information regarding the documents, the parties will hold another 30(b)(6) deposition.  See August Tr. at 41:20-25 (Court).

**IT IS ORDERED** that Plaintiff's Motion to Compel Defendant to Respond to Plaintiff's First Set of Discovery, filed April 14, 2015 (Doc. 30), is granted in part and denied in part.  First,

pursuant to the parties' agreement, the Court orders Speedy Loan to disclose all loan documents relating to other Speedy Loan customers that meet Daye's requests, but Speedy Loan need not admit that the loans are payday loans.  Second, the Court orders Speedy Loan to provide Daye with certain form loan contracts, according to the parties' agreement at the August hearing.  Third, the Court orders that, if Daye determines that she needs additional information regarding Speedy Loan's financials, the parties will hold another 30(b)(6) deposition.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Charles M. Delbaum
National Consumer Law Center, Inc.
Boston, MA

-- and --

Richard N. Feferman
Nicholas Mattison
Feferman & Warren
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Donald F. Kochersberger III
Alicia M. LaPado
Business Law Southwest, LLC
Albuquerque, New Mexico

      *Attorneys for the Defendant*